IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANTHONY BUTLER COMEGYS, )<br>)<br>Defendant. )<br>) | Criminal Action No. 08-160-GMS |

**MEMORANDUM**

## I.  INTRODUCTION

On November 4, 2008, the Grand Jury for the District of Delaware indicted Anthony Comegys ("Comegys") on conspiracy to distribute five hundred grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846, and possession with intent to distribute five hundred grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Presently before the court is Comegys' Motion to Suppress Evidence. (D.I. 14.) The court held an evidentiary hearing in connection with this motion on May 19, 2009 and subsequently directed the parties to file proposed findings of fact and conclusions of law. For the reasons that follow, the motion will be denied.

## II.  FINDINGS OF FACT

At the evidentiary hearing, the United States called one witness: Rhett Campbell ("Campbell"), a Special Agent with the 21st Judicial Drug Task Force in Tennessee. After listening to the testimony of the witness, the court concludes that Campbell's account of the facts

is credible. The following represents the court's essential findings of fact as required by Rule 12(d) of the Federal Rules of Criminal Procedure.

On August 12, 2008, at approximately 2:40 p.m., Campbell observed a Ford Taurus traveling 76 miles per hour in a 70 mile per hour zone. (D.I. 31 at 7.) Campbell testified that shortly after the Taurus passed his patrol car, he observed it slow down and move from the passing lane to the slow lane. (*Id.* at 7-8) Campbell testified that based on his training and experience in law enforcement, he regarded this change in driving behavior as unusual. (*Id.*) Campbell then conducted a traffic stop of the Taurus. The vehicle was occupied by Casandra Lee Norton ("Norton"), the driver, and Comegys, a passenger. (*Id.* at 7) Campbell approached the vehicle and asked Norton for her license and to step out of the car to speak with him. (*Id.* at 37-38.) Once outside the vehicle, Norton admitted to speeding and provided information regarding her travel itinerary. (*Id.* at 12-13.) Agent Campbell testified that Ms. Norton's claimed itinerary did not seem plausible because of the direction and distances involved. (*Id.* at 13.)

After speaking with Norton, Campbell approached the vehicle to speak with Comegys, who had remained in the passenger seat while searching for the paperwork of the rented vehicle. (D.I. 31 at 12.) In response to questions posed by Campbell, Comegys also provided information regarding where he and Norton had been traveling. (*Id.* at 14.) This information was inconsistent with the travel plans expressed by Norton.[1] (*Id.*) Once Comegys found the rental paperwork, Campbell returned to his patrol vehicle to run the license, tag, and rental information. (*Id.* at 15-16.)

While the license and registration information was being processed, Campbell approached Norton to ask additional questions in order to clarify their inconsistent travel

---

[1] Norton stated that she and Comegys went to Las Vegas, Dallas, and Alabama, while Comegys told Campbell they went to Las Vegas, El Paso, and New Mexico. (D.I. 31 at 14.)

itinerary. (D.I. 31 at 15-16.) Campbell also asked whether there was anything illegal in the car, and specifically whether there were any drugs or guns. (*Id.* at 42.) At 2:50 p.m., Norton granted Campbell oral consent to search the vehicle for any of those items. (*Id.* at 15.) Shortly thereafter, at 2:53 p.m., Campbell also acquired Comegys' oral consent to search the vehicle.[2] (*Id.* at 17.) During this time, the license and registration information was still being processed. (*Id.* at 16.)

At approximately 2:58 p.m., while searching the passenger compartment of the vehicle, Campbell discovered $17,400 in cash in Norton's purse. (D.I. 31 at 17.) Agent Campbell questioned Norton and Comegys separately about how the money was obtained. Both stated the money had been won in Las Vegas, but Norton stated that she won the money through a slot machine while Comegys was present, and Comegys said that Norton won the money playing roulette while he was upstairs. (*Id.* at 22.) At 3:01, Corey Currey, Campbell's partner, arrived with written consent to search forms. (*Id.* at 20.) The consent form gives the officers permission "to search the . . . vehicle . . . including any luggage, containers, and contents of all." *Gov't Exhibit 3*. The written consent form further states, "I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form." (*Id.*) At 3:02 p.m., approximately twenty-two minutes after the initial stop, Norton and Comegys signed the form. (*Id.* at 21.) During the remainder of the traffic stop, neither Comegys nor Norton withdrew or restricted their consent to search the vehicle. (*Id.* at 26.)

---

[2] Campbell asked Comegys whether there were any drugs, guns, or large amounts of money in the vehicle and the defendant denied any of these items were present. (D.I. 31 at 42.) Campbell then asked, "If I need to search is that fine with you?" The defendant replied, "It's fine with me. If she says it's fine with her, its fine with me." *Id.* at 51.

3

Shortly after obtaining written consent, Campbell discovered a vacuum food-sealing machine, saran wrap, and plastic bags in the trunk of the vehicle.[3] (D.I. 31 at 21.) At approximately 3:30 p.m., while searching the pocket of a pair of pants located within Comegys' luggage, Campbell recovered a folded receipt and confirmation slip for a U.S. Postal Service priority mail package mailed August 11, 2008 from El Paso, Texas to Dover, Delaware.[4] (*Id.* at 24-25.) Without informing Norton or Comegys, Campbell took photographs of the receipt and confirmation slip and subsequently placed the papers back where they were found. (*Id.*)

At 3:36 p.m., Agent Campbell called his supervisor to report what he had found and to request for a drug-detecting K-9 unit to come to the scene. At 4:31 p.m., a drug-detecting K-9 unit arrived and alerted to the presence of drug odor on the $17,400 in Norton's purse and to the vacuum sealer box. (D.I. 31 at 26-27.) Campbell subsequently seized the money, vacuum sealer, saran wrap, and baggies, and issued Norton a speeding citation. (*Id.* at 28.) The stop concluded at 5:47 p.m. when Norton and Comegys left. (*Id.* at 30.)

Tennessee authorities notified the U.S. Postal Inspection Service about the USPS Priority Mail parcel, and provided the confirmation number for the parcel. (D.I. 33 at 7.) On August 14, 2008, a federal search warrant was obtained and executed on the parcel, and agents discovered that the parcel contained three kilograms of cocaine. (*Id.*)

### III. CONCLUSIONS OF LAW

Comegys asserts that all physical evidence and statements obtained during the traffic stop should be suppressed as the product of an unreasonable search and seizure in violation of the

---

[3] Campbell testified that, based on his experience, these items are used to smuggle illegal drugs and currency by diminishing the odor that could possibly be detected by law enforcement K-9's. (D.I. 31 at 21.)

[4] Campbell testified that, based on his experience, he suspected Comegys and Norton mailed something of an illegal nature to Delaware. (D.I. 31 at 24.)

Fourth Amendment. Specifically, Comegys asserts that the initial traffic stop was an unreasonable seizure because the speeding violation and the driver's behavior cited by Campbell as reasons for the initial stop were "merely a pretext for the officer to stop an out-of-state vehicle operated by an African American to search for guns and drugs." (D.I. 32 at 8.) Comegys further argues that the scope of the consent obtained by Agent Campbell was limited to a search for guns and drugs, and that the search of Comegys's pants pocket and subsequent examination and photographing of the folded up postal documents found in that pocket was outside the scope of the consent. (*Id.* at 6-7.) The government argues that the initial stop did not violate the Fourth Amendment because the speeding violation provided Agent Campbell with an objectively reasonable basis to stop the car, and that Comegys and Norton consented to a broad search of the vehicle. (D.I. 33 at 7-8.) After considering the testimony elicited during the evidentiary hearing and the arguments presented by the parties, the court will deny Comegys' motion.

A. **Validity of the Initial Traffic Stop**

A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The Third Circuit analyzes these detentions under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), requiring an officer to have reasonable suspicion a traffic violation was committed before making a stop. *United States v. Delfin-Colina*, 464 F.3d 392, 397-98 (3d Cir. 2006). Once a traffic stop is made, it is well-settled that an officer may order the occupants out of the vehicle without any particularized suspicion. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004). In addition, an officer is permitted to question those occupants regarding basic information, including their itinerary, if the inquiry does not prolong the traffic stop. *United States v. Givan*, 320 F.3d 452, 458-59 (3d Cir. 2003).

In this case, Campbell observed a vehicle traveling 76 miles per hour in a 70 mile per hour zone. As a result of this traffic violation, Campbell had reasonable suspicion to conduct the initial traffic stop. The defendant's assertion that the traffic stop was motivated by factors such as race and the vehicle's out-of-state license plate is not supported by the record. Even if there were a factual basis for such an assertion, an officer's subjective motivation is irrelevant to determining whether it was reasonable for an officer to conclude a traffic violation was committed. *Whren v. United States*, 517 U.S. 806, 813 (1996). Consequently, it was permissible for Campbell to stop the vehicle; once the stop was initiated, Campbell was entitled to order the occupants out of the vehicle and question them regarding their travel plans during the time he was processing relevant information for the traffic stop. Therefore, Campbell's actions in making the initial stop of the vehicle were permissible under the Fourth Amendment.

### B.     Scope of Consent

While a warrant generally must be obtained in order for a search to be constitutionally valid, "a search conducted pursuant to consent is one of the specifically established exceptions to the warrant requirement." *Givan*, 320 F.3d at 459. An objective standard is used to measure the scope of the consent, requiring the court to determine what a reasonable person would have understood from the exchange between the officer and defendant. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Comegys asserts that Campbell exceeded the scope of consent by examining the text of the receipt and confirmation slip once determining that the pocket of the pants did not contain guns or drugs. He argues that the scope of consent was limited to a search for drugs and guns, since Campbell specifically mentioned those items before he obtained consent. (D.I. 32 at 6.) The court disagrees. Before he obtained consent to search the vehicle, Campbell asked Ms.

6

Norton to confirm that there was "nothing illegal in the car." Campbell then spoke to Comegys, who had mentioned a prior conviction for controlled substances, and asked Comegys whether there was "anything like that" in the car. Both Comegys and Ms. Norton provided oral consent to search before Campbell searched the vehicle, and both provided written consent before Campbell discovered and searched the luggage in which the pants and confirmation slip were found. The consent form specifically authorized Campbell "to search the . . . vehicle . . . including *any luggage*, containers *and contents of all*." (*See* D.I. 31 at 18.) The written consent form did not contain any limitations as to either the parts of the vehicle to be searched or the objects of the search. In addition, neither Comegys nor Ms. Norton ever limited the scope of their written or oral consent or indicated a desire to terminate their consent. Under these circumstances, Campbell's mention of guns and drugs before obtaining oral consent was far from sufficient to limit the scope of consent to a search for only those items. As a result, Campbell did not exceed the scope of consent by searching the pocket of the pants within Comegys' luggage because he was specifically authorized by the consent form to do so. Given the foregoing, the court concludes that the search of text of the receipt and confirmation slip found in Comegys' luggage was authorized by the consent to search form.[5]

Comegys also referenced the "duration" of the stop as a possible grounds for suppression in his initial motion (D.I. 14 at 2), and notes in his proposed findings of fact that the total duration of the traffic stop was three hours and six minutes. (D.I. 31 at 4.) Comegys cites no case law to support a conclusion that the duration of the traffic stop was excessive. Comegys also fails to acknowledge that the $17,400 cash, vacuum sealer, saran wrap, and baggies were all

---

[5] Since Campbell was acting within the scope of the consent, the court need not address whether Campbell also developed probable cause during the encounter as argued in the alternative by the government.

discovered within the first twenty-five minutes after the initial stop, and that the delivery confirmation and receipt were discovered approximately fifty minutes after the initial stop. The discovery of these items led Campbell to call his supervisor and request a K-9 to come to the scene, a request that was reasonable given the items that Campbell had discovered during his search of the vehicle to that point. From that point, the duration of the stop can be attributed mostly to the time that it took for the K-9 to unit to arrive at the scene and perform its search. Under these circumstances, the duration of the search is not grounds for suppression.

## IV.  CONCLUSION

For the foregoing reasons, the court hereby denies the defendant's motion to suppress evidence.

Dated: September 17, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. 08-160-GMS |
| ) | |
| ANTHONY BUTLER COMEGYS, ) | |
| ) | |
| Defendant. ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED THAT:

1. The defendant's motion to suppress evidence (D.I. 14) is DENIED.

Dated: September 17, 2009

_____
CHIEF UNITED STATES DISTRICT JUDGE